IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARY MASON, *et al.*, on behalf of themselves and others similarly situated,

    Plaintiffs,

v.

SYNCHRONY BANK,

    Defendant.

:
:
:
:
:
:
:
:

Case No. 3:17-cv-314

JUDGE WALTER H. RICE

MAGISTRATE JUDGE MICHAEL J. NEWMAN

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT SYNCHRONY BANK'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS (DOC. #18), AND OVERRULING AS MOOT PLAINTIFFS MARY MASON, YAHAIRA DIAZ-REYES AND KARETTA PARTRIDGE'S MOTION FOR CONDITIONAL CERTIFICATION, EXPEDITED OPT-IN DISCOVERY, AND COURT-SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS (DOC. #15); PLAINTIFFS' COMPLAINT (DOC. #1) IS DISMISSED WITH PREJUDICE; TERMINATION ENTRY

---

Plaintiffs, Mary Mason ("Mason"), Yahaira Diaz-Reyes ("Diaz-Reyes") and Karetta Partridge ("Partridge") (collectively "Plaintiffs" or, when applicable, "named Plaintiffs"), allege that Synchrony Bank ("Defendant" or "Synchrony") failed to compensate them for the time they spent performing required, but unpaid, "work before clocking in each day, including, but not limited to, starting, booting up, and logging into Defendant's computer systems, numerous software applications, and phone systems."

Doc. #1, ¶ 22, PAGEID #4. Plaintiffs claim that Defendant's refusal to pay Plaintiffs for that pre-shift work resulted in Plaintiffs not being paid for all hours worked or for overtime compensation "for all of the hours they worked over 40 [during] each workweek[,]" *id.*, ¶ 32, PAGEID #5, in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Ohio Minimum Wage Fair Standards Act ("OMFWSA"), Ohio Rev. Code § 4111.01 *et seq. Id.*, ¶¶ 48-58, PAGEID #8-10. On October 30, 2017, Plaintiffs filed a Motion for Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs ("Motion for Conditional Certification"), asking the Court to certify conditionally a collective action as to Plaintiffs' FLSA claims. Doc. #15, PAGEID #67.

On November 8, 2017, Defendant filed a Motion for Postponement of Briefing on Plaintiffs' Motion for Conditional Certification ("Motion for Postponement"), declaring its intention to file a Motion to Compel Individual Arbitration and Dismiss or, in the Alternative, to Stay the Proceedings ("Motion to Compel"). Doc. #16, ¶ 6, PAGEID #120-21. Defendant argued that its Motion to Compel would raise a threshold issue of whether this Court has jurisdiction to hear Plaintiffs' claims, individually or on a collective or class-wide. *Id.*, ¶ 7, PAGEID #121. Defendant filed its Motion to Compel the next day. Doc. #18. As part of a telephonic status conference on December 15, 2017, the Court orally sustained the Motion for Postponement, concluding that the Motion to Compel required the Court to determine—at the outset—whether the arbitration agreements are enforceable and, thus, deprive this Court of jurisdiction to hear Plaintiffs' claims. On December 18, 2017, after the Motion to Compel was fully

briefed, the parties entered into an agreement to toll the statute of limitations as to Plaintiffs' FLSA claims until February 7, 2018.

For the reasons set forth below, Defendant's Motion to Compel is OVERRULED as to its request for a stay of proceedings, and SUSTAINED in all other respects. Plaintiffs' Motion for Conditional Certification is OVERRULED AS MOOT, and their Complaint is DISMISSED WITH PREJUDICE.

### I.    FACTUAL BACKGROUND

The named Plaintiffs were employed by Defendant at various times between November 14, 2014, and August 7, 2017. Doc. #1, ¶¶ 16-18, PAGEID #3-4. At all times, Plaintiffs allege, Defendant was subject to the FLSA and OMFWSA minimum wage and overtime requirements, and Plaintiffs were non-exempt employees paid on an hourly basis. *Id.*, ¶¶ 10-13, 20-21, PAGEID #3, 4. Prior to beginning employment, Defendant sent to Plaintiffs a set of employment policies, which Plaintiffs were required to sign and return to Defendant as a condition of their employment. Doc. #33, PAGEID #386 (citing Doc. #19-3, PAGEID #237-40; Doc. #33-1, ¶¶ 3(a-b), 4, PAGEID #394-95). One of the policies, prior to December 1, 2015, was Defendant's alternative dispute resolution ("ADR") program of binding arbitration, entitled "Solutions." Doc. #19-3, ¶ 7, PAGEID #199. Solutions required employees to submit all employment-related disputes to arbitration, including wage and hour claims, and waiving any right that employees or Defendant would have to litigate a claim in state or federal court. *Id.*, ¶ 5, PAGEID #209. Further, Solutions required employees to arbitrate any employment-related dispute on an individual basis, and contained an express provision by which

employees and Defendant waived any right to resolve their claims as part of a class or collective action. Doc. #19-2, § M, PAGEID #180; Doc. #19-3, ¶18, PAGEID #202.

In late 2015, in conjunction with its separation from General Electric Capital Corporation, Defendant transitioned its ADR program away from Solutions to a new program known as "Resolution." Doc. #19-3, ¶¶ 4-5, 8, PAGEID #199, 204. "[E]mployees hired on or after September 1, 2015[,] agreed to Resolution at the time of, and as a condition of, their hiring and employment. All other then-current employees of Defendant became subject to Resolution effective December 1, 2015. Any then-former employees not covered by Resolution remained bound by Solutions." Id., ¶ 8. On or about October 1, 2015, Marc Chini, Defendant's Human Resources Leader ("Chini"), informed all of its employees (including all named Plaintiffs) of the transition to Resolution via an electronic mail message with the subject line "ACTION REQUIRED: Synchrony Financial Alternative Dispute Resolutions Program[.]" Id., PAGEID #204. Chini stated that Resolution would take effect on December 1, 2015, and asked employees "to acknowledge that you are bound by the terms of *Resolution* by *clicking the voting button above at the top of this message\**." Id. (emphasis in original). Chini's email stated that as of December 1, 2015, "all employees receiving this letter will be required to address claims through *Resolution* as individual claims. You may not pursue them in court[,] and *this is exactly the same as your current situation*" under Solutions. Id., PAGEID #205 (emphasis in original).

Neither Chini's email nor the Resolutions program description, which was hyperlinked in the email, Doc. #19-3, ¶ 10, PAGEID #200, PAGEID #204, contained any provision by which employees could elect not to participate in Resolution and remain

4

employed by Defendant. All named Plaintiffs and all but three of the opt-in Plaintiffs were employed by Defendant on or after December 1, 2015. Doc. #19-3, ¶ 11, PAGEID #200; Doc. #33-1, ¶ 5, PAGEID #395.

The Resolution program description contained a section entitled "Exclusivity of Arbitration for Covered Claims; Injunctive Relief; [and] Individual Nature of Covered Claims[,]" which stated that "Employees and [Defendant] are not allowed to litigate a Covered Claim in Any Court." Doc. #19-1, § I, PAGEID #158. Further, the section required that "Employees . . . waive their right[s] to pursue any Covered Claims as, or against, a representative or member of a class or collective action . . . . All Covered Claims must be brought <u>on an individual basis only</u> in Resolution." *Id.*, PAGEID #159 (emphasis added). All named Plaintiffs continued working for Defendant after December 1, 2015, but none is currently employed by Defendant. Doc. #1, ¶¶ 16-18, PAGEID #3-4.

## II. LEGAL STANDARD FOR MOTION TO COMPEL ARBITRATION

The United States Arbitration Act of 1925, 9 U.S.C. § 1 *et seq.*, also known as the Federal Arbitration Act ("FAA"), promotes "a liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). "In deciding whether to compel arbitration of a federal statutory claim, we first consider whether the statutory claim is generally subject to compulsory arbitration. If the claim is not exempt from arbitration, we must then consider whether the arbitration agreement is valid." *Morrison*

5

v. *Circuit City Stores, Inc.*, 317 F.3d 646, 665 (6th Cir. 2003) (citing *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311 (6th Cir. 2000). "[A]n agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Nonetheless, "[i]n evaluating motions or petition[s] to compel arbitration, courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847, 851 (S.D. Ohio 2003) (Rice, C.J.).

### III. ANALYSIS

#### A. Compulsory Arbitration of FLSA Claims, and Compulsory Individual Arbitration of OMFWSA Claims, are Permissible

In their Motion to Compel, Defendants note that the Sixth Circuit recently held that clauses in employment agreements that compel arbitration of FLSA and OMFWSA claims should be upheld, and that individual arbitration of OMFWSA claims could be compelled. Doc. #19, PAGEID #142 (citing *Huffman v. Hilltop Cos.*, 747 F.3d 391, 398-99 (6th Cir. 2014)). In their memorandum in opposition, Plaintiffs do not argue that FLSA and OMFWSA claims may not be arbitrated, or that a waiver of the right to participate in a class action for OMFWSA claims is invalid. Nor, in light of *Huffman*, could Plaintiffs have reasonably so argued. Thus, Plaintiffs' OMFWSA claims must be

6

individually arbitrated, 9 U.S.C. § 2, and those claims are dismissed from this Complaint with prejudice.

### B. *AEI* does not bar Individual Arbitration of FLSA Claims, and a Stay is not Necessary to Adjudicate the Motion to Compel

In the Motion to Compel, Defendant notes the recent decision in *Nat'l Labor Relations Bd. v. Alt. Enter., Inc.* ("*AEI*"), in which the Sixth Circuit held that employee waiver of their rights to bring claims on a class or collective-wide basis were illegal as to claims that arise under the National Labor Relations Act of 1935 ("NLRA"). Doc. #19, PAGEID #134 (citing 858 F.3d 393, 405 (6th Cir. 2017); 29 U.S.C. § 151 *et seq.*). Defendant argues that *AEI* applies only as to such claims, *id.*, and notes that, even post-*AEI*, District Courts within the Sixth Circuit have consistently upheld waivers on collective actions for claims arising under the FLSA. *Id.*, PAGEID #145 n.7 (citing *Doe #1 v. Déjà vu Consulting, Inc.*, No. 3:17-cv-40, 2017 WL 3837730, at *12-13 (M.D. Tenn. Sept. 1, 2017); *Myers v. TRG Customer Sols., Inc.*, No. 1:17-cv-52, 2017 WL 3642295, at *3-5 (M.D. Tenn. Aug. 24, 2017)); Doc. #33, PAGEID #375-76 (citing *Pyle v. VXI Glob. Sols., Inc.*, No. 5:17-cv-220, 2017 WL 5132765, at *4 (N.D. Ohio Nov. 6, 2017)). Plaintiffs do not argue, in their memorandum in opposition, that the *AEI* is applicable to FLSA claims, Doc. #27, PAGEID #345-46, and the Court agrees that *AEI* is inapposite, for two reasons. First, *AEI* did not purport to overrule its holding in *Huffman* that individual arbitration could be compelled in wage and hour claims. 747 F.3d at 398-99 (citing *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013). Indeed, *AEI*'s holding was expressly limited to NLRA claims. 858 F.3d at 408.

7

Second, the Supreme Court recently stated that it had "no qualms in enforcing a class waiver in an arbitration agreement even though the federal statute at issue, the Age Discrimination in Employment Act [of 1967 ('ADEA')], expressly permitted collective actions." *Am. Express Co. v. Ital. Colors Rest.*, 570 U.S. 228, 237, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1981)). As discussed below, the ADEA expressly incorporates the FLSA's collective action provision. 29 U.S.C. § 626(b) (citing 29 U.S.C. § 216(b)). The Supreme Court's *dicta* in *Italian Colors*, along with subsequent Sixth Circuit decisions, compel the conclusion that *AEI* has no bearing on this case.

In its Motion to Compel, Defendant asks that, if this Court were to find the *AEI* holding controlling or persuasive as to Plaintiffs' FLSA claims, the Court stay any decision on whether to compel arbitration until the Supreme Court issues a decision in the consolidated appeal of three cases[1] as to the legality "of class/collective action waivers in arbitration agreements as applied to employment claims." Doc. #19, PAGEID #134. However, all three cases (collectively "*Epic Systems*") pertain to waivers of claims arising under the NLRA. Thus, for the same reasons that *AEI* is not binding on this Court as to the waivers at issue in the instant case, the Supreme Court's ruling in *Epic Systems* would have no impact on the enforceability of waivers in claims arising under the FLSA. Accordingly, to the extent that Defendant's Motion to Compel seeks to stay a ruling until the Supreme Court issues a decision in *Epic Systems*, it is overruled.

---

[1] *Epic Sys. Corp. v. Lewis* (No. 16- 285, *appealed from Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016)); *Ernst & Young, LLP v. Morris* (No. 16-300, *appealed from Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016); and *Nat'l Labor Relations Bd. v. Murphy Oil, USA, Inc.* (No. 16-307, *appealed from Murphy Oil, USA, Inc. v. Nat'l Labor Relations Bd.*, 808 F.3d 1013 (5th Cir. 2015)).

### C. Solutions and Resolution are Valid Agreements to Arbitrate Wage Claims Individually

Plaintiffs argue that "a contract provision which precludes individuals from pursuing collective actions under the FLSA is illegal and unenforceable in *any forum*, including in arbitration." Doc. #27, PAGEID #335 (emphasis in original). In support, they note that illegality is a defense to enforcement of a contract, and that "employers and employees are not permitted to contract around the rights guaranteed by the FLSA." *Id.*, PAGEID #334-35 (emphasis removed) (citing *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 764, 151 L. Ed. 2d 755 (2002); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Plaintiffs claim that the FLSA's plain language, statutory history and fundamental purpose demonstrate that the FLSA's collective action mechanism is one of the law's "essential, operative procedures[,]" and any attempted waiver of the right to arbitrate collectively is illegal and should be invalidated. *Id.*, PAGEID #340 (citing 29 U.S.C. § 216(b); *Gilmer*, 500 U.S. at 29; *Mitsubishi*, 473 U.S. at 628; *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 982, 985 (9th Cir. 2016)).

In support, Plaintiffs note that the Supreme Court stated that the enactment of the FLSA was driven by Congressional recognition that it is axiomatic that employees have less power individually vis-à-vis their respective employers, and that FLSA's statutory rights, although "conferred on a private party . . . affect[] the public interest," and thus "may not be waived or released if such waiver or release contravenes the statutory policy." Doc. #27, PAGEID #337 (emphasis removed) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)). Further, they note that the United States Department of Labor has taken the position that certain

9

provisions of section 216(b)—the section under which the collective action falls—are nonwaivable, and that Courts have held that attempts to contract around those provisions are illegal and, consequently, unenforceable. *Id.*, PAGEID #340-41 (citing *Barrentine v. Arkansas-Best Freight System,* 450 U.S. 728, 740, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) ("we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."); *Brooklyn Sav. Bank,* 324 U.S. at 707; *Long John Silver's Rest. v. Cole,* 514 F.3d 345, 348 nn. 4-5 (4th Cir. 2008); *Walthour v. Chipio Windshield Repair, LLC,* 944 F. Supp. 2d 1267, 1277 (N.D. Ga. 2013), *aff'd* 745 F.3d 1326 (11th Cir. 2014)).

Moreover, Plaintiffs argue that the collective action waiver means that Solutions and Resolution do not accord rights at least as broad as those guaranteed under the FLSA, and the waivers should be invalidated for that reason as well. Doc. #27, PAGEID #341.[2] Specifically, Plaintiffs claim that "[a] bar to collective actions in arbitration would permit employers an end[-run] around the FLSA requirements because individual employees will be discouraged from initiating arbitration to recover, what most times is, a nominal amount of damages." *Id.*, PAGEID #344. Plaintiffs note that the Sixth Circuit has invalidated arbitration clauses that "conflict[] with the statute's purpose of both providing individual relief and generally deterring unlawful conduct through the enforcement of its provisions[,]" Doc. #27, PAGEID #342 (quoting *Floss,* 211 F.3d at

---

[2] Plaintiff cites several cases in which Courts have invalidated provisions in arbitration agreements in which the rights and remedies available were not as broad as they would be under the applicable federal statute. Doc. #27, PAGEID #341 (citing *Kristian v. Comcast Corp.,* 446 F.3d 25, 48 (1st Cir. 2006); *Booker v. Robert Half Int'l, Inc.,* 413 F.3d 77, 83 (D.C. Cir. 2005); *Hadnot v. Bay, Ltd.,* 344 F.3d 474, 478 (5th Cir. 2003); *Morrison,* 317 F.3d at 670 (6th Cir. 2003); *McCaskill v. SCI Mgmt. Corp.,* 285 F.3d 623, 626 (7th Cir. 2002)). Notably, however, none of those cases concerned the FLSA.

10

313), and argue that the collective action waivers in Solutions and Resolution, therefore, should be invalidated. *Id.*, PAGEID #344-45.

Plaintiffs' arguments are insufficient to meet their heavy burden of "show[ing] that Congress intended to preclude a waiver of a [collective] judicial forum[.]" *Gilmer*, 500 U.S. at 26. *Gilmer* upheld compulsory arbitration of claims that otherwise would arise under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, a law that expressly incorporated the FLSA's collective action provision. *Gilmer*, 500 U.S. at 35; 29 U.S.C. § 626(b) (citing 29 U.S.C. § 216(b)). Notably, the *Gilmer* Court rejected the argument that arbitration would prevent effective vindication of an employee's ADEA rights. Rather, the Court held that "arbitration is consistent with Congress'[s] grant of concurrent jurisdiction over ADEA claims to state and federal courts," *id.* at 29 (citing 29 U.S.C. § 626(c)(1)), and that "arbitration agreements, like the provision for concurrent jurisdiction, serve to advance the objective of allowing claimants a broader right to select the forum for resolving disputes, whether it be judicial or otherwise." *Id.* (internal quotation marks and citation omitted). As FLSA claims may also be brought "in any Federal or State Court of competent jurisdiction[,]" 29 U.S.C. § 216(b), *Gilmer* casts doubt on Plaintiffs' argument that individual arbitration prevents effective vindication of their rights under the FLSA.

Plaintiffs attempt to distinguish *Gilmer* by noting that the Supreme Court, in that case, did not address an arbitration provision that <u>required</u> <u>individual</u>, as opposed to <u>permitting</u> <u>collective</u>, arbitration of claims. They direct the Court to *Gaffers v. Kelly Servs., Inc.*, Doc. #27, PAGEID #342 (citing 203 F. Supp. 3d 829, 837-38 (E.D. Mich. 2016)), wherein the District Court conceded that "[t]he Sixth Circuit has not directly

addressed the question, and neither has the Supreme Court[,]" of whether individual arbitration can be compelled. Nonetheless, the Court found it "safe to conclude that the agreement to arbitrate in this case cannot be enforced to bar the plaintiffs from pursing a collective action in any forum to resolve their unpaid overtime claims." 203 F. Supp. 3d at 839-40. The *Gaffers* Court held that to bar collective resolution of wage and hour claims would be an impermissible abrogation of employees' rights under FLSA, which an employer may not effect merely "by purporting to obtain the employee's contractual consent to give up those rights." *Id.* at 841 (citing *Killion v. KeHE Distrib., LLC*, 761 F.3d 574, 592 (6th Cir. 2014); *Boaz v. FedEx Cust. Info. Servs., Inc.*, 725 F.3d 603, 607 (6th Cir. 2013)).

For two reasons, Plaintiffs' reliance on *Gaffers* is misplaced. <u>First</u>, as Defendant notes, the majority of District Courts within the Sixth Circuit that have examined the issue have not followed *Gaffers*. Doc. #33, PAGEID #375-76 (citing *Cronk v. TRG Cust. Sols., Inc.*, No. 1:17-cv-59, 2017 WL 5517259, at *7 (M.D. Tenn. Nov. 17, 2017); *Myers v. TRG Cust. Sols., Inc.*, No. 1:17-cv-52, 2017 WL 5478398, at *8 (M.D. Tenn. Nov. 15, 2017); *Pyle*, 2017 WL 5132765, at *4); *see also McGrew v. VCG Holding Corp.*, 244 F. Supp. 3d 580, 590 (W.D. Ky. 2017) (citing *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d at 1334-35; *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002); *Colley v. Scherzinger Corp.*, No. 1:15-cv-720, 2016 WL 2998111 (S.D. Ohio May 25, 2016) (Beckwith, J.)) (concluding that, *Gaffers* notwithstanding, "[t]he overwhelming weight of persuasive authority supports

12

the Court's conclusion" that FLSA collective action waivers as part of arbitration agreements are valid and enforceable).

Second, the Court concludes that *Gaffers* misapplied the Sixth Circuit precedent upon which it purports to rely. In neither *Killion* nor *Boaz* was an arbitration agreement at issue, and the Court in *Killion* expressly distinguished other appellate caselaw for that reason. 764 F.3d at 592 (emphasis added) (citing *Walthour,* 745 F.3d at 1331; *Sutherland,* 726 F.3d at 296; *Carter,* 362 F.3d at 298; *Adkins,* 303 F.3d at 502) ("<u>Crucially, however</u>, the respective waiver agreements in all of the above-cited cases <u>included provisions subjecting the employees to arbitration</u>."). Further, the *Killion* Court stated that Supreme Court and appellate court decisions constitute an "emerging consensus" as to the validity of class and collective-action waivers in arbitration agreements, but "do not speak to the validity of a collective-action waiver <u>outside of the arbitration context</u>." *Id*. (emphasis added) (citing *Italian Colors*, 570 U.S. at 233; *Gilmer,* 500 U.S. at 35; *Walthour,* 745 F.3d at 1331; *Sutherland,* 726 F.3d at 296; *Carter,* 362 F.3d at 298; *Adkins,* 303 F.3d at 502). In so stating, the Sixth Circuit implied that it would be compelled to find a collective action waiver legal <u>within</u> the arbitration context, and this Court finds that, in light of the *dicta* in *Killion* and the majority of decisions within and outside the Sixth Circuit, such a finding is compelled.

### D. No Other Ground is Sufficient to Avoid Enforcement

As Defendants note, Plaintiffs do not argue that duress, unconscionability, or any other equitable principle should operate to invalidate the collective action waivers. Doc. #33, PAGEID #373. However, in the alternative to the waivers being found invalid for illegality, Plaintiffs argue that the waiver clauses were so ambiguous, confusing and

13

devoid of detail, that Plaintiffs' waivers of their respective rights to jury trials were not voluntary and knowing, *i.e.*, there was no agreement to arbitrate. In support, they note that "Resolution is a 19-page document with the arbitration clause beginning on page 13. Solutions is a 23-page document and the arbitration language beings on page 16." Doc. #27, PAGEID #348 (citing Doc. #19-1, PAGEID #166; Doc. #19-2, PAGEID #189). "To expect employees to be able to decipher a long, legal document during orientation or through an online acknowledgement[,]" Plaintiffs argue, "is not a valid waiver of Plaintiffs' right to a trial by jury." *Id*. Further, Chini's email describing Resolution contained no reference to waiver of a jury trial, and stated that by clicking the "voting button," employees were merely acknowledging the existence of Resolution, not agreeing to be bound by it. Doc. #19-3, PAGEID #204. Consequently, Plaintiffs claim, they did not agree to arbitrate their wage and hour claims at the expense of being able to bring a FLSA claim before a jury, and the Motion to Compel should be overruled. Doc. #27, PAGEID #347-48 (citing U.S. Const. am. VII; *Hergenreer v. Bickford Senior Living Group, LLC*, 656 F.3d 411, 420 (6th Cir.2011); *Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 940 (S.D. Ohio 2014) (Graham, J.)).

Contrary to Plaintiffs' claim that employees were expected to "decipher a long, legal document during orientation[,]" Doc. #27, PAGEID #348, Mason was sent a copy of the Solutions handbook on November 5, 2014, and returned to Defendant her signed "acknowledgment agreeing to Solutions on November 17, 2014[.]" Doc. #33-1, ¶ 3(a), PAGEID #394 (citing Doc. #19-3, PAGEID #237-38). Similarly, Partridge was sent a copy of the Solutions handbook more than one month prior to the beginning of her employment (the date on which her signed acknowledgment was due), and she

14

returned her signed acknowledgement to Defendant six days after the handbook was sent. *Id.*, ¶ 3(b), PAGEID #394-95 (citing Doc. #19-3, PAGEID #239-40). The acknowledgment as to Solutions stated that "I agree as a condition of my employment, to waive the right to pursue Covered Claims (as defined in the Solutions Procedure) against the company in Court (<u>bench or jury trial</u>)." Doc. #19-3, ¶ 5, PAGEID #237 (emphasis added).

Moreover, all employees were informed of Resolution and its waiver of judicial remedies at least sixty days prior to the program taking effect. Doc. #19-3, PAGEID #204. Diaz-Reyes's signed acknowledgement as to Resolution stated: "I agree[,] as a condition of my employment, to waive the right to pursue Covered Claims (as defined in Resolution) against the company in court (or on a class basis in court or arbitration)." Doc. #27, PAGEID #348. Thus, all named Plaintiffs acknowledged that, as condition of their employments, they were waiving their rights to avail themselves of the judicial system. That some of the waivers did not contain the express phrase "jury trial" is immaterial; the Sixth Circuit "has flatly rejected the claim that an arbitration agreement must contain a provision expressly waiving the employee's right to a jury trial." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 506 (6th Cir. 2004) (quoting *Burden v. Check Into Cash of Kentucky, LLC*, 267 F.3d 483, 492 (6th Cir. 2001) ("The loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate.").

Finally, as Defendant states in its reply memorandum, the length of the Solutions and Resolution handbooks "is not a defense[;] nor is any claim that an employee did not read or understand these documents[,]" Doc. #33, PAGEID #384; Plaintiffs cite no caselaw supporting their argument that the length or complexity of the handbooks is

sufficient to render their waivers involuntary. Accordingly, the FLSA claims of all named and opt-in Plaintiffs must be arbitrated individually under the procedures set forth in Solutions or Resolution. *See* Doc. #19-3, ¶ 11, PAGEID #200-01 n.1; Doc. #33-1, ¶ 5, PAGEID #395 (undisputed facts showing that all named Plaintiffs and opt-in Plaintiffs were bound by Solutions or Resolution).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration and to Dismiss, or Alternatively, to Stay the Proceedings, Doc. #18, is OVERRULED as to its request to stay proceedings, and SUSTAINED in all other respects. Plaintiffs' Complaint, Doc. #1, is DISMISSED WITH PREJUDICE, and their Motion for Conditional Certification, Doc. #15, is OVERRULED AS MOOT.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: January 22, 2018

WALTER H. RICE
UNITED STATES DISTRICT JUDGE